# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# NORTHERN DIVISION

DAVID R. JACKSON                                                              PLAINTIFF

V.                        CASE NO. 1:17-CV-00103-JM-BD

SOCIAL SECURITY ADMINISTRATION                                                DEFENDANT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to Judge James Moody. Either party may file written objections to all or part of this Recommendation. Objections should specifically explain the factual and legal basis for the objection; and to be considered, objections must be received by the Clerk of Court within 14 days of the date of this Recommendation. By not objecting, parties may waive the right to appeal questions of fact.

David Jackson applied for social security disability benefits with an alleged onset date of August 7, 2004. (R. at 70). After a hearing, the administrative law judge ("ALJ") denied Mr. Jackson's application for benefits. (R. at 38). The Appeals Council denied his request for review. (R. at 1). The ALJ's decision, therefore, now stands as the Commissioner's final decision. Mr. Jackson filed this lawsuit requesting judicial review.

I.      **The Commissioner's Decision:**

The ALJ found that Mr. Jackson had the following severe impairments: osteoarthritis, obesity, depression, and anxiety. (R. at 28). Even so, the ALJ found that Mr. Jackson had the residual functional capacity ("RFC") to perform sedentary work, except that he could not engage in frequent stooping, crouching, climbing, or balancing;

he could not be exposed to concentrated amounts of respiratory irritants such as dust, fumes, strong odors, or extreme changes in temperature or humidity; and he was limited to unskilled work, meaning work where interpersonal contact would be incidental to the work performed, the complexity of tasks could be learned and performed by rote, with few variables and requiring little independent judgment. The supervision required would need to be simple, direct, and concrete; and he could not deal with the general public. (R. at 31).

Mr. Jackson has no past relevant work. (R. at 36). The ALJ took testimony from a vocational expert ("VE"), who testified that a person with Mr. Jackson's age, education, work experience, and RFC could perform jobs such as table worker or paster/cutter of small component parts. (R. 37). The ALJ therefore held that Mr. Jackson was not disabled. (R. at 37–38).

## II. Discussion:

Mr. Jackson argues that the mental RFC is not supported by substantial evidence and that the ALJ erred in finding that his anxiety disorder did not meet or equal listing 12.06. Because the mental RFC assigned by the ALJ is not supported by substantial evidence on the record as a whole, it is not necessary to reach Mr. Jackson's other argument.

The task of the Court is to determine whether substantial evidence supports the Commissioner's findings. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means, "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir.

2009) (citation omitted). In determining whether the ALJ decision is supported by substantial evidence, the Court is obligated to review evidence that supports the Commissioner's findings, and also, evidence that detracts from the decision. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The Court will not reverse the Commissioner's decision, however, just because there is sufficient evidence to support a contrary outcome.

Mr. Jackson based his application for benefits primarily on his mental impairments. Testimony from Mr. Jackson and his sister indicates that he scarcely ever leaves the house unless it is for something "important." (R. at 48–52, 57–59). This is supported by mental health treatment records. Nancy Bunting, Ph.D., noted that Mr. Jackson did not have a driver's license, could not shop by himself, and spent his time watching television, reading, and playing video games. (R. at 296). She noted anxious mood, restricted or subdued affect, and a belief that people are talking about him.

According to Dr. Bunting, Mr. Jackson communicated in a "socially adequate, if dejected, manner." (R. at 295, 297). She did find that he was able to attend and sustain concentration during the interview, could persist, and had the capacity to complete tasks within an acceptable timeframe. (R. at 297). As Mr. Jackson points out, however, his impairments are not cognitive. Dr. Bunting also noted that Mr. Jackson might have limited frustration tolerance; and he appeared to be honest and give a fair effort. (R. at 297).

At an appointment on June 15, 2015, Mr. Jackson stated that he had panic attacks when leaving his house. In fact, he experienced multiple panic attacks during the session.

(R. at 304). On July 9, 2015, he had a panic attack in the waiting room. (R. at 315). He admitted that medication helped, on July 31, 2015, but the provider noted that Mr. Jackson still appeared anxious. (R. at 316). The record contains a treatment gap between October of 2015 and April of 2016. (R. at 362). He was asked to keep appointments. (R. at 362). On April 14, 2016, Mr. Jackson shook throughout the session and stated that he had been unable to control his panic attacks. (R. at 364).

The Commissioner notes that Mr. Jackson reported his anxiety as "resolved" in June of 2015, and argues therefore that the statement is inconsistent with his allegations. (R. at 336). Notes on the preceding page, however, indicate that he presented with anxiety and that he "has listed anxiety as resolved, but he was really withdrawn on first exam." (R. at 335). He reported an inability to function because of social anxiety, and the examining nurse noted that she had known Mr. Jackson since his childhood and had never seen him in public, though she had seen other members of his family. (R. at 335).

The Commissioner otherwise relies on psychiatric observations made in the context of physical examinations and normal cognitive examinations rather than evidence relating to specifically to agoraphobia or anxiety.

The Commissioner also notes that Mr. Jackson had stated to his mental healthcare providers that he was seeking treatment to prove his case for Social Security. (R. at 304, 361). On one of these occasions, Mr. Jackson expressed hope that is application would be approved so that he could afford medical treatment and go back to school. (R. at 361). The Commissioner also argues that Mr. Jackson's failure to seek treatment weighs against his credibility. As the Eighth Circuit Court has recognized, however, a mentally

4

ill person's failure to seek or comply with treatment can be, and often is, a result of the very mental illness that causes disability. *Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009).

Mr. Jackson alleged that he suffers panic attacks when he leaves the house and when he interacts with others. It is not at all surprising that a person with such an impairment would fail to seek treatment. The agoraphobic claimant is put in a difficult position. He must either seek treatment and records to bolster his claim—as the lack of records and failure to seek treatment will be fatal to his case—or continue to suffer without treatment because seeking treatment with the hope of receiving benefits and having the financial ability to improve will be construed against him. Each of these considerations is appropriate for certain impairments. Nevertheless, the records must be read with the particular impairment in mind.

The ALJ limited Mr. Jackson to unskilled work with incidental contact with others and no contact with the general public. The record does not support Mr. Jackson's having the ability to meet attendance requirements or to function without significant interruption due to panic attacks. The ALJ's RFC, rather than accounting for the actual impairment that most hinders Mr. Jackson ability to function, simply includes standard mental restrictions for persons whose cognitive processes are impaired.

Because the RFC does not adequately reflect Mr. Jackson's severe limitations caused by anxiety, it would also be appropriate on remand for the Commissioner to reexamine in detail listing 12.06 for anxiety.

### III.　**Recommended Disposition:**

The mental RFC is not supported by substantial evidence on the record as a whole. For this reason, the Commissioner's decision denying benefits should be REVERSED and REMANDED, with instructions to develop the record as necessary; to fully and properly consider all evidence concerning Mr. Jackson's mental impairments; to properly account for anxiety in the RFC; and to reconsider whether Mr. Jackson's anxiety meets or equals listing 12.06.

Dated this 17th day of July, 2018.

_____
UNITED STATES MAGISTRATE JUDGE